UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| UNITED STATES OF AMERICA | ) | DOCKET NO. 3:17-cr-114 |
|---|---|---|
| | ) | |
| v. | ) | GOVERNMENT'S MEMORANDUM IN |
| | ) | SUPPORT OF MOTION TO REVIEW |
| (1) ROBERT M. BOSTON | ) | AND DISCLOSE NON-PRIVILEGED |
| (2) ROBERT S. LABARGE | ) | ATTORNEY COMMUNICATIONS |
| | ) | |
| | ) | |

During the course of the Government's investigation, it has obtained—but not reviewed—certain documents that likely reflect communications between Defendants and counsel for their former company, Zloop. Because Defendants no longer control Zloop's privilege, Defendants have neither the standing to challenge the Government's review of the documents nor a substantive basis for any such challenge. That said, some of these materials may also have been covered by an individual privilege of one or both Defendants. As set forth in more detail below, however, Defendants have waived any such individual privilege, in some cases expressly.

Out of an abundance of caution, however, the Government has repeatedly sought Defendants' positions regarding the review and production of these documents. Defendant LaBarge has waived his privilege over these documents, but Defendant Boston contends that an unspecified attorney-client relationship may prevent the Government from reviewing them. He has not provided the Government with the name of such an attorney, however, much less the nature of the relationship. He also has not accepted the Government's offer for him to review the documents for privilege. Accordingly, the Government now respectfully requests that the Court enter an order stating that none of the materials subject to its Motion are privileged and allowing the Government to review and produce them in discovery.

## FACTUAL BACKGROUND

In mid-2012, Defendants founded Zloop, a Hickory, North Carolina-based electronic waste recycling firm. By August 2015, it was bankrupt. *See In Re Zloop, Inc.*, No. 15-11660 (Bankr. D. Del.). As a result of the bankruptcy, substantially all of Zloop's Hickory assets—including many of its books and records—were sold to a third party. *See id.*, Doc. 507 (attached as Exhibit 1).

Subsequently, the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") confirmed a Chapter 11 Liquidation Plan (the "Plan"). *See id.*, Doc. 638 (attached as Exhibit 2).[1] Notably, the Plan was made possible by a Plan Funder—Victim 1 in the Indictment—who had sued Zloop and its founders in 2014, and who paved the way for the Plan by agreeing to inject money into the Zloop bankruptcy estate in 2016. *See id.*, at Exhibit A, pp. 11, 19, 25.

Pursuant to the Plan, the Bankruptcy Court appointed a Plan Administrator who reported to, and served at the pleasure of, the Plan Funder (*i.e.*, Victim 1). *See id.*, at p. 24. The Plan Administrator was the sole officer and director of Zloop, and had the authority to assert or waive Zloop's privileges. *See id.*, at pp. 16, 21, 22. The Plan specifically contemplated that Zloop would provide the files of all of its counsel to Victim 1 and waive, as to Victim 1, any applicable privileges protecting those files. *See id.*, at Exhibit A, p. 49.

During the course of the company's operations, Zloop retained several attorneys to assist it in (among other things) selling franchises, selling equity, and litigating disputes. Among other law firms, the Government understands that two firms jointly represented Zloop and one or more

---

[1] The Bankruptcy Court confirmed the Plan over the objections of Defendants. *See id.*, Doc. 618.

of the defendants: (1) Eric Newman, Esq. represented both Zloop and Defendant Robert LaBarge in connection with the sale of franchises; and (2) Phelps Dunbar LLP represented Zloop and each Defendant in connection with civil litigation filed against them by Victim 1. The Government is unaware of any other joint representation between counsel representing Zloop and counsel representing one or both of Defendants.[2] Accordingly, it appears that Phelps Dunbar is the only firm that represented Defendant Boston personally in regards to matters that relate to the Indictment.

During the course of the Government's investigation, it obtained documents from the following sources and segregated (without review) all or a portion of them:

(1) Certain paper documents from the third party that purchased Zloop's Hickory assets. Approximately 14,688 documents were segregated from this production;

(2) Certain electronic documents stored in connection with Defendants' corporate email addresses (blabarge@zloop.com and bboston@zloop.com) from Zloop's email host, GoDaddy.com, LLC. Approximately 5,673 documents were segregated from this production; and

(3) Imaged computers of Zloop and communications between Defendants and Zloop's bankruptcy counsel, DLA Piper, from counsel for the Plan Administrator.[3] Approximately 48,245 documents were segregated from this production.

(collectively, the "Subject Documents"). Categories 1 and 3 were produced without objection by the parties in control of those documents (the third party and the Plan Administrator,

---

[2] DLA Piper provided corporate representation to Zloop during its bankruptcy, and Defendants communicated with attorneys from DLA Piper regarding that representation.

[3] As authorized by the Plan, the Plan Administrator was represented by the same firm that represents Victim 1.

3

respectively), and counsel for the Plan Administrator has confirmed to the Government that Zloop does not object to the Government's review of the documents in Category 2. *See* Ex. 3.

During the course of this matter, the Government has asked for Defendants' positions regarding the Government's review of other communications between Defendants and a broad array of attorneys, including Phelps Dunbar. Specifically, after the Government obtained a copy of Defendant LaBarge's Zloop laptop and copies of communications between Defendant Boston and Phelps Dunbar, it sought Defendant Boston's position regarding review of these documents. Counsel for Defendant Boston stated, in part,

> I have conferred [with] Mr. Boston . . . . [T]he Phelps Dunbar communications may contain some communications that implicate communications with lawyers regarding aspects which could be construed as personal, rather than Zloop. Nevertheless, Mr. Boston believes that all [attorney-client] communications in the hands of the lawyers whose [comunications] might be in these two places would tend to . . . have the tendency to exculpate him as to such transcations. Mr. Boston is waiving any [attorney-client] privilege he might have in the attorney communications you've asked about.

*See* Ex. 4. Defendant LaBarge similarly consented in the Government's review of certain privileged materials.

Notwithstanding Defendant Boston's broad waiver as to communications involving Phelps Dunbar, the Government repeatedly sought Defendants' positions with regard to the Subject Documents. *See* Ex. 5, Ex. 6, and Ex. 7. Although Defendant LaBarge has waived his privileges, Defendant Boston contends that despite his prior express waiver, he still may have a valid privilege over some of the Subject Documents. When the Government sought clarification of what attorney-client relationship(s) would protect the Subject Documents, however, Defendant Boston was unable to identify one. *See* Ex. 8.

## **ANALYSIS**

Federal common law governs the analysis of privileges in a criminal case. FED. R. EVID. 501; *United States v. Tedder*, 801 F.2d 1437, 1441 (4th Cir. 1986). Because the attorney-client privilege has the effect of withholding relevant material from the fact-finder, the Fourth Circuit "has consistently stated that the privilege must be strictly construed." *Grand Jury Proceedings Under Seal v. United States*, 947 F.2d 1188, 1190 (4th Cir. 1991).

Of course, both the attorney-client privilege and work product protection can be waived. *See United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982) ("Any disclosure inconsistent with maintaining the confidential nature of the attorney-client relationship waives the attorney-client privilege."); *In re Doe*, 662 F.2d 1073, 1079 (4th Cir. 1981) (discussing waiver of work product doctrine). Organizations have—and can waive—privileges as well. *Cf. In re Grand Jury Subpoena: Under Seal*, 415 F.3d 333, 339 (4th Cir. 2005). When legal control of an organization passes to new management in bankruptcy, the authority to waive a privilege passes to that new management. *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 349 (1985).

Here, as an initial matter, it appears that Defendant Boston had only one attorney-client relationship relating to Zloop in which he was represented in his individual (rather than representative) capacity: Phelps Dunbar represented Zloop and each Defendant in connection with civil litigation filed against them by Victim 1. *See* Ex. 4. With that single exception, then, Defendant Boston appears to have no standing to assert a privilege because he does not control Zloop's organizational privileges. *See* Exhibit 2, at pp. 16, 21, 22 (vesting the Plan Administrator with control over Zloop's privileges); *Weintraub*, 471 U.S. at 349. Thus, any of the Subject Documents consisting of communications between Defendant Boston and DLA Piper (or other firms representing Zloop) are not protected by a privilege controlled by Defendant Boston, and the Government should be able to review and produce them.

With respect to the individual privilege described above, Defendant Boston agreed to waive the privilege over broad swathes of communications between himself and Phelps Dunbar. *See* Ex. 4; *Jones*, 696 F.2d at 1072. The subject matters addressed by these materials included the Defendants' solicitation of funds from Victim 1, a subject obviously relevant to the Indictment. Moreover, the Government anticipates that many of the Subject Documents will be duplicates of documents already contained within Defendant LaBarge's Zloop laptop and the Phelps Dunbar communications produced by the Zloop Plan Administrator—two sources for which Defendant Boston has expressly waived his privilege.

Although Defendant Boston expressly waived his individual privileges only with respect to specific (albeit voluminous) categories of documents, these waivers should extend to other documents on the same subject matters. *See id.* (setting forth the common law rule that "[a]ny voluntary disclosure by the client to a third party waives the privilege not only as to the specific communication disclosed, but often as to all other communications relating to the same subject matter."); FED. R. EVID. 502(a) (subject matter waiver occurs if waiver made in federal proceeding was (1) intentional; (2) covered materials concerning the same subject matter; and (3) does not result in unfairness). Defendant Boston therefore has waived the privilege he may have had over any of the Subject Documents concerning Defendants' solicitation of funds from Victim 1, and the Government should be able to review and produce the Subject Documents.

Further, many of the Subject Documents are in the possession (and/or under the control of) Defendants' adversary. Specifically, the Plan Administrator has caused Zloop to sue Defendants Boston and LaBarge in a civil suit pending in the Western District of Louisiana. *See Mosing v. Boston*, No. 6:14-cv-2608 (W.D. La.), Docs. 102-1, 107, 137. Moreover, it appears that Zloop's new management has reviewed—and is now using in litigation—communications

6

with Phelps Dunbar. *See, e.g.*, *Zloop, Inc. v. Phelps Dunbar*, 3:17-cv-397 (M.D. La.), Doc. 1-1, ¶¶ 30-42, 115-119 (Zloop's complaint against Phelps Dunbar, which quotes emails between Defendant Boston, Defendant LaBarge, and Phelps Dunbar, and alleges that Defendants perpetrated fraud) (Ex. 9). Despite Defendants having been aware of the Plan Administrator's possession of these documents and adversarial position, the Government is unaware of any steps Defendant Boston has taken to assert any privilege in these documents since these filings. Permitting such adversarial use is inconsistent with the privilege and destroys it. *Jones*, 696 F.2d at 1072.

Finally, Defendant Boston's communications Phelps Dunbar were, in fact, never privileged because they fall within the crime-fraud exception to the attorney-client privilege and the work product doctrine. The crime-fraud exception applies if the Government makes a prima facie showing that "(1) the client was engaged in or planning a criminal or fraudulent scheme when he sought the advice of counsel to further the scheme, and (2) the documents containing the privileged materials bear a close relationship to the client's existing or future scheme to commit a crime or fraud." *In re Grand Jury Proceedings #5 Empanelled Jan. 28, 2004*, 401 F.3d 247, 251 (4th Cir. 2005). Under the crime-fraud exception, communications made for the purpose of concealing or covering-up a crime are not privileged. *In re Grand Jury Proceedings*, 102 F.3d 748, 751 (4th Cir. 1996).

Here, a grand jury has found probable cause to believe that Defendants engaged in criminal fraud regarding the money they obtained from Victim 1 (the subject of Phelps Dunbar's representation of Defendants). Moreover, it is likely that communications between Defendants and Phelps Dunbar would bear a close relationship to their fraud. For example, in an email already produced to the Government on the laptop provided by Defendant LaBarge, Phelps

Dunbar pressed Defendants on the fraudulent UCC financing statement described in paragraphs 20-23 of the Indictment:

> [W]e would like to follow up on our request for more information regarding the attached email and UUC1 [sic]. As you know [Victim 1] asserts that Zloop fabricated a UCC1. We have pulled the exhibit attached to plaintiffs' Complaint that purportedly supports this claim. Per the attached, it appears that a UCC1 was emailed by Mr. LaBarge "per Bob Boston" to [J.J.] on December 5, 2013. Based on our conversation on Monday, we understood that neither of you had any involvement in preparing or sending the UCC1.

Ex. 10. Defendants' retention of Phelps Dunbar was intended thwart Victim 1 from recovering damages he suffered due to Defendants' fraud; indeed, one witness has told the Government that Defendant Boston bragged about "using [Victim 1's] money to fight [Victim 1's] lawsuit." Accordingly, there is prima facie evidence that communications between Defendants and Phelps Dunbar are subject to the crime-fraud exception, and thus are not privileged. Thus, the Government should be able to review and produce them.

## CONCLUSION

For the foregoing reasons, the Government respectfully requests that the Court enter an order stating that the Subject Documents are not privileged, and that the Government may review and produce them to Defendants. In the alternative, the Government requests that the Court enter an order permitting the Government: (1) to use an agreed-upon set of search terms to segregate any of the Subject Documents covered by any privilege the Court finds is valid and controlled by Defendant Boston; (2) to produce any such Subject Documents to Defendant Boston for him to conduct a privilege review; and (3) to review and produce any other Subject Documents to each Defendant.

RESPECTFULLY SUBMITTED, this 8th day of September, 2017.

*/s/ Taylor J. Phillips*
Taylor J. Phillips

8

Case 3:17-cr-00114-RJC-DSC   Document 32   Filed 09/08/17   Page 8 of 10

D.C. Bar 1016271
Assistant United States Attorney
United States Attorney's Office
227 West Trade Street, Suite 1650
Charlotte, N.C. 28202
Telephone: (704) 344-6222
Fax: (704) 344-6629
Email: taylor.phillips@usdoj.gov

*Attorney for the United States*

9

Case 3:17-cr-00114-RJC-DSC   Document 32   Filed 09/08/17   Page 9 of 10

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of September, 2017, the foregoing was served upon the defendants herein through their attorneys of record via electronic filing.

>Kevin Tate
>Assistant Federal Defender
>Suite 300
>129 West Trade Street
>Charlotte, North Carolina 28202
>Kevin_Tate@fd.org
>
>*Counsel for Defendant Robert M. Boston*
>
>Sean P. Devereux
>Deveruex & Banzhoff, PLLC
>Suite 1100
>The Jackson Building
>Asheville, North Carolina 28801
>sdevereux@dblawoffices.com
>
>*Counsel for Defendant Robert S. LaBarge*

*/s/ Taylor J. Phillips*
Attorney for the United States
